**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **TRACEY WILLIAMS and SKYLA HEARN,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| | ) **Case No. 20-cv-4554** |
| | ) |
| **v.** | ) |
| | ) **Plaintiffs Demand Trial by Jury** |
| | ) |
| **DUSABLE MUSEUM OF AFRICAN AMERICAN** | ) |
| **HISTORY, INC.** | ) |
| | ) |
| **Defendant.** | ) |

**COMPLAINT**

NOW COMES Plaintiffs, **TRACEY WILLIAMS and SKYLA HEARN**, by their attorneys LAD LAW GROUP, P.C, and complains as follows against Defendant **DUSABLE MUSEUM OF AFRICAN AMERICAN HISTORY, INC.**:

**PARTIES AND JURISDICTION**

1. Plaintiff **TRACEY WILLIAMS ("Williams")** is a citizen of the United States of America, and a citizen and resident of Country Club Hills, Illinois, County of Cook.

2. Plaintiff **SKYLA HEARN ("Hearn")** is a citizen of the United States of America, and a citizen and resident of Chicago, Illinois, County of Cook.

3. Defendant **DUSABLE MUSEUM OF AFRICAN AMERICAN HISTORY, INC.** ("**DuSable**" or "**Defendant**") is a not-for-profit organization, organized under the laws of the state of Illinois, with offices located in, and doing business in Chicago, Illinois, County of Cook.

4. At all relevant times, Defendant was an employer as that term is defined in 29 U.S.C. § 1002(5).

1

5.  At all relevant times, Plaintiffs were employees of Defendant as that term is defined in 29 U.S.C. § 1002(6).

6.  At all relevant times, Defendant maintained employee benefits plans under 29 U.S.C. § 1002(1).

7.  At all relevant times, Plaintiffs were participants in Defendant's offered employee benefits plans under 29 U.S.C. § 1002(7).

8.  This is an action for damages for violation of Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq., the Illinois Wage Payment and Collections Act 820 ILCS 115/1, et seq., and common law claims of breach of fiduciary duty, conversion fraud, and promissory estoppel.

9.  This Court has jurisdiction to hear this Complaint pursuant to 28 U.S.C. §1331, §1343, and §1367.

## FACTS

10. Plaintiffs both worked for DuSable as full-time employees, and entitled to enroll in certain benefits plans as employees.

11. Plaintiff Williams began working for DuSable Museum in February 1993, as Director of Special Events, a position she held throughout her employment with Defendant.

12. Plaintiff Hearn began working for Defendant in April 2016. Her final position with Defendant was Chief Archivist and Special Collections Librarian.

13. During Plaintiffs employment, both received Defendant's Employee Handbook ("the Handbook"), agreeing that they would become familiar with, and abide by its contents.

14. DuSable's handbook provided, in relevant part:

2

a. "You will be paid bi-weekly for all the time you have worked during the past pay period. Your payroll stub itemizes deductions made from your gross earnings." (Section 2-9)

b. "By law, the Museum is required to make deductions for Social Security, federal income tax and any other appropriate taxes." (Section 2-9)

c. "If you believe there is an error in your pay, bring the matter to the attention of the Manager of Human Resources immediately so the Museum can resolve the matter quickly and Employees can also access pay information on www.MyADPResource.com" (Section 2-9)

d. "…it is DuSable Museum of African American History's policy to provide a combination of supplemental benefits to all eligible employees In keeping with this goal, each benefit program has been carefully (Section 3-1)

e. "DuSable Museum of African American History (including the officers and administrators who are responsible for administering the plans) retains full discretionary authority to interpret the terms of the plans, as well as full discretionary authority with regard to administrative matters arising in connection with the plans and all issues concerning benefit terms, eligibility and entitlement." (Section 3-1)

f. "DuSable Museum of African American History strongly encourages employees to use direct deposit to their savings or checking accounts. The ALINE paycard is also available to museum employees. Funds are automatically loaded onto a branded prepaid card for immediate access to their money. Authorization forms are available from the Manager of Human Resources. Employees can also access

3

direct deposit and ALINE paycard information on www.MyADPResource.com

…" (Section 2-10)

15. During the course of both Plaintiffs' employment, they received payment of wages via ACH deposit, through ADP Payroll Services. The wages were received by-weekly, at the end of each week.

16. The wages were accompanied by itemized deductions, showing deductions for state, federal, and local taxes, health insurance premiums deductions, and deductions for retirement plans.

17. Plaintiffs could go online to www.MyADPResource.com, as stated in the Handbook, to review their wages for each pay period, and see their itemized deductions.

18. In approximately January 2020, DuSable abruptly, and without prior notice to Plaintiffs, stopped issuing Plaintiffs' wages though ADP, and issued paper checks from an operating account.

19. Deductions were taken from the wages issued through the paper checks, but were not itemized, and were inconsistent with prior deductions taken when wages were paid through ADP Payroll Services.

20. While working for Defendant, Plaintiff Williams was enrolled in DuSable's group employee medical insurance plan, administered by third party, Blue Cross Blue Shield of Illinois. Plaintiff Williams was also enrolled in DuSable's group employee dental insurance plan, administrated by third-party, Delta Dental.

21. At all relevant times, DuSable agreed to deduct the employee portion of the monthly premiums from the wages of Plaintiff Williams, and to forward and pay a monthly

4

premium to Blue Cross Blue Shield of Illinois and Delta Dental, in exchange for medical and dental coverage for Plaintiff Williams.

22. At all relevant times, DuSable deducted monthly health and dental insurance premiums from Plaintiff Williams's wages. DuSable acted as trustee and fiduciary in the administration of the medical insurance and dental insurance plans.

23. However, at times, DuSable failed to forward the deductions to Blue Cross Blue Shield of Illinois and to Delta Dental, without notifying its employees of its inaction.

24. In approximately April 2019, Blue Cross Blue Shield of Illinois terminated DuSable employees' medical insurance plans, due to non-payment. The plans were not reinstated until July, 2019.

25. In approximately August of 2019, Delta Dental terminated DuSable employees' dental insurance plans, due to non-payment. The dental plans were not reinstated during Plaintiff Williams's employment.

26. DuSable employees' medical insurance plans were terminated again in October of 2019, and were not reinstated until January 2020.

27. During each termination period, DuSable continued to deduct monthly premiums from the Plaintiff Williams's wages, failed to forward them to Blue Cross Blue Shield of Illinois, and failed to notify Plaintiffs of its inaction.

28. After Delta Dental terminated DuSable's employees' dental plans, DuSable continued to deduct monthly premiums from the Plaintiff Williams's wages.

29. In approximately November 2019, Plaintiff Williams, unaware that her medical plan was inactive at the time, sought medical care under the Blue Cross Blue Shield of Illinois medical plan, and incurred a bill from her medical provider for the uncovered services.

30. Plaintiff Williams notified DuSable of the outstanding bill due to the terminated coverage. DuSable refused to reimburse Williams for the bill for services incurred, causing the matter to proceed towards collections against Williams.

31. As of January 1, 2019, both parties were enrolled in 403(b) retirement plan, administered by third party Investment Manager, Franklin Templeton Investments.

32. DuSable acted as trustees and fiduciaries in the administration of the 403(b) retirement plans, as it withheld deductions from the Plaintiffs wages, and transmitted them to Franklin Templeton Investments, who then invested the funds on behalf of Plaintiffs.

33. DuSable's involvement in the plan administration involved discretionary determinations, such as hardship determinations.

34. Beginning in approximately May 2019, DuSable deducted from Plaintiffs' wages, their designated 403(b) employee contributions to their plans, but failed to forward them to the Investment Manager.

35. Plaintiffs requested that DuSable stop taking the deductions and/or forward the deductions to the Investment Manager, and/or return the wages to the employees.

36. DuSable ignored these request, and continued the deductions, without forwarding them to the Investment Manager, or returning the wages to the employees.

## COUNT I
### (ERISA)

37. Plaintiffs repeat and reallege Paragraphs 1-36, as though fully set forth herein, as Paragraphs 1-36 of Count I of this Complaint.

38. Defendant DuSable was a plan fiduciary for Plaintiffs 403(b) retirement plan, responsible for deducting plan contributions and forwarding them to the plan's Investment Manager.

6

39. DuSable breach its fiduciary duty to Plaintiffs in one or more of the following ways:

    a. Beginning May 2019, DuSable deducted plan contributions from Plaintiffs wages, and failed to forward them to the Investment Manager for investment

    b. Failed to notify Plaintiffs it was not forwarding deducted wages to the Investment Manager

    c. Failed to stop deductions when directed to by Plaintiffs

    d. Failed to return deductions not forwarded to the Investment Manager, back to Plaintiffs after their requests

    e. Refused to provide Plaintiffs with information requested under the plan

    f. Failed to forward medical and dental insurance premiums to Plaintiff Williams's insurance plans, causing the plans to be terminated, and causing Plaintiff Williams out of pocket expenses, and negative credit history.

40. As a result of DuSable's conduct, Plaintiffs have been deprived of their earned wages, and of returns that they would have gained in their wages had been forwarded to the Investment Managers.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court find that Defendant violated Plaintiffs rights under ERISA, and enter a judgment in favor of Plaintiffs, making the following findings and granting the following relief:

    A. That this Honorable Court award Plaintiffs money reasonably calculated to compensate for all monetary, and non-monetary damages sustained as a result of conduct by Defendant;

    B. That this Honorable Court award punitive damages;

    C. That this Honorable Court award pre-judgment interest and costs;

D.      That this Honorable Court award reasonable attorney's fees and costs; and

E.      That this Honorable Court award such other and further relief as it may deem just and equitable.

## COUNT II
## FAIR LABOR STANDARDS ACT
## 29 CFR § 516.2 (10)

41. Plaintiffs repeat and reallege Paragraphs 1-40, as though fully set forth herein, as Paragraphs 1-40 of Count II of this Complaint.

42. Defendants failed to keep records of "additions to or deductions from pages paid each pay period" for Plaintiffs.

43. When Plaintiffs requested this information, Defendant refused to provide it.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court find that Defendant violated Plaintiffs' rights under the Fair Labor Standards Act and enter a judgment in favor of Plaintiff, making the following findings and granting the following relief:

A.      That this Honorable Court find that Defendant violated Plaintiffs' rights under the Fair Labor Standards Act;

B.      That this Honorable Court award Plaintiffs money reasonably calculated to compensate his for all monetary, and non-monetary damages sustained as a result of the discrimination by Defendant;

C.      That this Honorable Court award pre-judgment interest and costs;

D.      That this Honorable Court award reasonable attorney's fees and costs; and

E.      That this Honorable Court award such other and further relief as it may deem just and equitable.

8

## <u>COUNT III</u>
## <u>ILLINOIS WAGE PAYMENT AND COLLECTIONS ACT</u>

44. Plaintiffs repeat and reallege Paragraphs 1-43, as though fully set forth herein, as Paragraphs 1-43 of Count III of this Complaint.

45. Beginning January 2020, DuSable failed to provide itemized deductions for Plaintiffs' wages paid for the pay dates: January 3, 2020, January 31, 2020, February 14, 2020, February 27, 2020, March 12, 2020, March 27, 2020, and April 10, 2020.

46. The deductions that were taken, were inconsistent, and on information and belief, were not forwarded to the appropriate state, federal, and local authorities.

47. DuSable wrongfully withheld wages for Plaintiffs 403(b) retirement plans, after Plaintiffs had directed DuSable not to do so. Those wages were never returned to Plaintiffs.

48. DuSable wrongfully withheld wages for Plaintiff Williams's dental insurance plans, and never returned the wages to Plaintiff Williams.

49. In approximately May 2019, Plaintiff Hearn was pre-approved by Defendant's Executive staff (CEO, COO, CFO and VP) to attend the 2019 Society of American Archivists (SAA) Annual Conference. Hearn received approval and confirmation that she would be reimbursed for the expenses related to the conference as they fell within her job description.

50. Plaintiff Hearn incurred approximately $1000 worth of expenses. In approximately late August/September, Hearn tendered all of the required paper work to Defendant for reimbursement.

51. Defendant never reimbursed Hearn for the expenses.

52. Plaintiff Hearn also made out of pocket expenditures for the following work related expenses incurred while working for Defendant, and in the course of performing her job duties: mileage, cell phone use and supplies, to support the work of the Archives department. Defendant agreed to reimburse Hearn for these expenses, but never did so.

53. DuSable's Handbook states that: "After three years of employment, full-time employees are awarded fifteen (15) days of vacation per year. Vacation is accrued on a pro-rata basis throughout the year." (Section 3-3)

54. Plaintiff Hearn worked a full bi-weekly pay-period for Defendant, prior to her April 10, 2020 termination from DuSable. Her final paycheck was issued on April 10, 2020.

55. Defendant failed to pay Hearn her full paycheck for that payperiod. She was only paid for three days out of the 10-day work period.

56. At the time of her termination from DuSable, Hearn had two days of vacation accrued from 2019, and had accumulated at least six days of vacation time in 2020.

57. Defendant failed to pay Hearn any vacation pay as part of her final compensation.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court find that Defendant violated Plaintiffs' rights under the Illinois Wage Payment and Collections Act, and enter a judgment in favor of Plaintiffs, making the following findings and granting the following relief:

A. That this Honorable Court find that Defendant violated Plaintiffs rights under the Illinois Wage Payment and Collections Act;

B. That this Honorable Court award Plaintiff money reasonably calculated to compensate his for all monetary, and non-monetary damages sustained as a result of the discrimination by Defendant;

C. That this Honorable Court award pre-judgment interest and costs;

D.      That this Honorable Court award reasonable attorney's fees and costs; and

E.      That this Honorable Court award such other and further relief as it may deem just and equitable.

**COUNT IV**
**CONVERSION[1]**

58. Plaintiffs repeat and reallege Paragraphs 1-57, as though fully set forth herein, as Paragraphs 1-57 of Count IV of this Complaint.

59. DuSable wrongfully, and without authorization, withheld money from Plaintiffs' earned wages, when it failed to forward deductions to the Investment Manager, Franklin Templeton.

60. The monies were due and owing to Plaintiffs, as they had earned them in exchange for work previously performed for Defendant.

61. Plaintiffs requested return of the monies withheld, but Defendant refused to return the funds, and never forwarded it to Investment Manager, Franklin Templeton.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendant committed conversion against Plaintiffs personal property, and enter a judgment in favor of Plaintiffs making the following findings and granting the following relief:

A.      That this Honorable Court award Plaintiffs money reasonably calculated to compensate her lost wages, and for all monetary damages sustained as a result of the conversion by Defendant;

B.      That this Honorable Court award pre-judgment interest and costs;

C.      That this Honorable Court award reasonable attorney's fees and costs; and

---

[1] Plead in addition to, and in the alternative to, Count I.

D.      That this Honorable Court award such other and further relief as it may deem just

and equitable.

## COUNT V
## FRAUD[2]

62. Plaintiff repeats and realleges Paragraphs 1-61, as though fully set forth herein, as

Paragraphs 1-61 of Count V of this Complaint.

63. DuSable wrongfully, and without authorization, withheld money from Plaintiffs' earned

wages, when it failed to forward deductions to the Investment Manager, Franklin

Templeton.

64. DuSable falsely represented to Plaintiffs that the deductions that were taken out, were

being forwarded to Investment Manager, Franklin Templeton.

65. DuSable knew this statement to be false, and failed to notify Plaintiffs of its inaction, so

that Plaintiffs would continue their respective plans, and continue authorizing deductions.

66. Plaintiffs relied on DuSable's representation, and continued contributions to the plan.

67. Plaintiffs were damaged as a result, as their 403(b) plans were not funded as anticipated,

causing them to lose the money taken for the contributions, as well as the return they

would have earned on the investment.

68. Defendant continued to deduct medical insurance premiums from  Plaintiff Williams's

earned wages, representing to Williams that her medical insurance coverage was active.

69. Based on that representation, Williams sought medical care under, and incurred a bill

from her medical provider for the uncovered services.

---

[2] Plead in addition to, and in the alternative to, Count I.

70. Plaintiff Williams notified DuSable of the outstanding bill due to the terminated coverage. DuSable refused to reimburse Williams for the bill for services incurred, causing the matter to proceed towards collections against Williams.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court find that Defendant committed fraud against Plaintiffs, and enter a judgment in favor of Plaintiffs making the following findings and granting the following relief:

    E.    That this Honorable Court award Plaintiffs money reasonably calculated to compensate her lost wages, and for all monetary damages sustained as a result of the fraud by Defendant;

    F.    That this Honorable Court award pre-judgment interest and costs;

    G.    That this Honorable Court award reasonable attorney's fees and costs; and

    H.    That this Honorable Court award such other and further relief as it may deem just and equitable.

## COUNT V (PROMISSORY ESTOPPEL)
## (PLAINTIFF HEARN ONLY)

71. Plaintiff repeats and realleges Paragraphs 1-70, as though fully set forth herein, as Paragraphs 1-67 of Count V of this Complaint.

72. Defendant's Handbook contained policy statements that created enforceable contractual rights.

73. That language includes, but is not limited to the following statements:

    a.    DuSable Museum of African American History strongly encourages employees to use direct deposit to their savings or checking accounts. The ALINE paycard is also available to museum employees. Funds are automatically loaded onto a branded prepaid card for immediate access to their money. Authorization forms

are available from the Manager of Human Resources. Employees can also access direct deposit and ALINE paycard information on www.MyADPResource.com …" (Section 2-10)

b. "You will be paid bi-weekly for all the time you have worked during the past pay period. Your payroll stub itemizes deductions made from your gross earnings." (Section 2-9)

c. This language created an unambiguous promise that direct deposit would be available for employees.

d. From the time Plaintiff Hearn began working for Defendant, until January 2019, she had always been paid bi-weekly, via direct deposit, in accordance with Defendant's promise in its Handbook.

e. Plaintiff Hearn relied on that promise, and set up her checking account for automatic bill payment, and made financial purchases in accordance with the direct deposit pay dates.

f. Hearn's reliance was expected and foreseeable, as she signed up for direct deposit, maintained direct deposit throughout her employment with Defendant, and never revoked her authorization.

g. In January 2019, without notifying its employees of any change, Defendant unilaterally changed its payment policies, and issued employees paper checks, instead of using direct deposit.

h. Plaintiff Hearn did not receive her paper check on her usually scheduled pay date, causing a delay in the deposit of her wages.

14

      i.    This delay caused Hearn to incur insufficient fund fees from her back, as a result of not being paid in the manner promised by Defendant.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court find that Defendant made a promise to Plaintiff Hearn, and breached that promise, causing injury to Hearn, and enter a judgment in favor of Hearn making the following findings and granting the following relief:

    A.    That this Honorable Court award Plaintiff Hearn money reasonably calculated to compensate her for all monetary damages sustained as a result of the conduct by Defendant;

    B.    That this Honorable Court award pre-judgment interest and costs;

    C.    That this Honorable Court award reasonable attorney's fees and costs; and

    D.    That this Honorable Court award such other and further relief as it may deem just and equitable.

Respectfully submitted,

By: /s/ Jemelle D. Cunningham
Plaintiff's Attorney

Jemelle D. Cunningham
LAD LAW GROUP, P.C.
161 N. Clark St.
Chicago, Illinois 60601
(312) 252-3085
j.cunningham@ladlawgroup.com